50 CCPA

**Application of Walter BUECHE and Albert Zieger.**

**Patent Appeal No. 6965.**

United States Court of Customs and Patent Appeals.

May 16, 1963.

Marzall, Johnston, Cook & Root, Richard L. Johnston and Matthew C. Thompson, Chicago, Ill., for appellants.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 8–13, the only remaining claims of the application Serial No. 656,152 filed April 30, 1957 for RECOVERY OF GASEOUS AND VAPOROUS SUBSTANCES.

Claim 8, illustrative of the appealed claims, reads:

"8. A process involving the reaction of acetylene under reaction conditions wherein the acetylene will not decompose exothermically in either the gaseous state or in an absorbed state in an absorbing liquid while providing high space-time yields which comprises diluting the acetylene with a nondecomposable substance in the gaseous state at a pressure below the explosion limit of the diluted, gaseous mixture, introducing the diluted, gaseous mixture into an absorber containing an absorbing liquid at a low temperature lying below the reaction temperature of the acetylene and therein absorbing the acetylene-containing gas in the absorbing liquid in such an amount that the acetylene concentration in the absorbing liquid is below and near the ignition limit of 100 normal cubic centimeters of acetylene per cubic centimeter of the absorbing liquid introducing the absorbing liquid containing the absorbed acetylene into a body of the absorbing liquid in a reaction vessel, said body of the absorbing liquid in said reaction vessel being at an acetylene reaction temperature, raising the temperature of the absorbing liquid introduced into said body of absorbing liquid to an acetylene-reacting temperature to thereby react the acetylene in the reaction vessel under a pressure so high that no considerable amounts of absorbed gases escape from the absorbing liquid in the reaction vessel at a reaction temperature, and withdrawing from the reaction vessel a portion of the absorbing liquid, containing the acetylene reaction product, in an amount correlated to the amount of absorbing liquid introduced into the reaction vessel."

Appellants' application describes a method for safely carrying out "either continuously or discontinually" chemical reactions with a decomposable gas, particularly acetylene, to obtain high space-time yields of the reaction product [1]

---

1. Appellants in their brief define "space-time yields" as "yields measured in terms of units of weight or volume of product recovered per cubic unit of reactor space

without danger of an explosive decomposition. Many valuable reactions involving a gas such as acetylene are known. However the explosive hazards characteristic of a gas such as acetylene at elevated temperatures and/or pressures present a disadvantage.[2]

Appellants have found that even at high space-time yields the explosive danger that can occur with decomposition of a gas such as acetylene can be avoided by carrying out the reaction of acetylene in the presence of a liquid medium.

Appellants' claimed process comprises first diluting acetylene gas with a nondecomposable substance in the gaseous state at a pressure below the explosive limit for the diluted, gaseous mixture. The diluted, gaseous mixture is then introduced at a temperature lying below the reaction temperature of the acetylene into an absorber containing an absorbing liquid to form a solution in which the concentration of the acetylene is below but near the ignition limit of 100 normal cubic centimeters of acetylene per cubic centimeter of the absorbing liquid. Thereafter the absorbing liquid containing the absorbed acetylene is passed to a reaction vessel wherein the temperature of the absorbing liquid is raised to an acetylene reacting temperature.[3] The pressure in the reaction vessel is maintained at a value so high that no considerable amounts of absorbed gases escape from the absorbing liquid in the reaction vessel at the reaction temperature.

In sustaining the examiner's rejection of the appealed claims, the board relied on the following prior art:

Reppe (I)      1,959,927    May 22, 1934
Beller et al.  2,472,084    June 7, 1949
Reppe (II)     2,604,490    July 22, 1952
Maragliano     2,617,829    Nov. 11, 1952

The Maragliano patent describes the reaction of acetylene and an alcohol by a process which produces a high yield of vinylic ether products at a rapid rate. Maragliano's process comprises dissolving, or absorbing, undiluted acetylene in an alcohol at a temperature between about $-10°$ C. and $+20°$ C. and under a pressure of from about 5 to 10 atmospheres. Next the solution of diluted acetylene is pumped into a reaction vessel where the reaction may be conducted continuously. The reaction between the acetylene and the alcohol takes place exclusively in the liquid phase, generally at temperatures of from about $100°$ to $150°$ C. and at a pressure high enough to keep substantially all the acetylene dissolved in the reaction liquid.

The Reppe (I) patent describes a continuous process in which acetylene diluted with nitrogen is passed into a reaction vessel containing an organic hydroxy compound, e.g. an alcohol. The temperature is then raised to the reaction temperature and the reaction takes place under pressure.

The Beller et al. patent discloses a process similar to Reppe (I) except that the acetylene before being introduced into the reaction zone is saturated with the vapors of a normally-liquid compound.

The Reppe (II) patent describes the reaction of carbon monoxide and acetylene in aqueous medium under high temperatures and pressure. The acetylene taking part in the reaction may be diluted first with a gas such as nitrogen.

Appellants' process has three essential features:

(1) The handling of acetylene in the gaseous phase in admixture with a nondecomposable substance at a

per unit of time, e. g., pounds of product per cubic foot of reactor space per hour."

2. A cited Beller et al. patent states:
"As is well known to those experienced in this art, acetylene, under elevated pressures and particularly at elevated temperatures, is inherently unstable. * * * explosions may occur simply

because acetylene, under elevated pressures and temperatures, is inherently unstable."

3. Appellants disclose that the absorbing liquid may (1) react with the acetylene, e. g. when diluted acetylene is absorbed in a recycled solution of methanol, methyl vinyl ether and a catalyst and later re-

pressure below the explosion limit of the gaseous mixture.

(2) Absorption of the acetylene-containing gas in an absorbing liquid at a concentration below and near the ignition limit of 100 normal cubic centimeters of acetylene per cubic centimeter of absorbing liquid at low temperatures lying below the reaction temperature.

(3) Reaction of the acetylene in a reaction vessel by raising the temperature of the absorbing liquid to the reaction temperature, the pressure in the reaction vessel being sufficiently high to prevent escape of gaseous acetylene from the absorbing liquid in the reaction vessel at the reaction temperature.

Taking into account those three features the board in sustaining the examiner's rejection of the appealed claims stated:

"When the Maragliano process is compared with the three features * * * it is seen that features (2) and (3) are fairly met by the reference except for the specific upper limit of 100 c.c. of acetylene per c.c. of absorbing liquid. However, in view of the known dangers involved in the handling of acetylene, we believe that any reasonably cautious person would limit the amount of acetylene to below the ignition limit. Accordingly, this precaution cannot be regarded as unobvious.

"With respect to feature (1), Maragliano does not teach the admixture of the gaseous acetylene with a diluent so as to produce a nonexplosive mixture at 5 to 10 atmosphere, and this would unquestionably be a danger point in his operation. However, such safeguard in the handling of gaseous acetylene is well known in the art, as indicated by * * * appellants' brief, the fifth paragraph in column

1 of the Maragliano patent, the Beller et al. patent, and the two Reppe patents. The danger point in Maragliano's process would be recognized immediately, and the proper remedy therefor would be quite evident from prior practice in this art."

Appellants argue that the discovery of the technique by which the maximum, safe amount of acetylene can be dissolved in the solvent so that the process can be operated at substantially maximum space-time yields constitutes an important contribution to the art.

We are faced with one issue here. Appellants state it very concisely in their brief wherein they say "The basic question is whether the steps of the process of application claims 8–13 * * * were obvious at the time of appellants' invention to a person of ordinary skill in the acetylene art."

As shown by Maragliano, the process is old for carrying out a reaction with acetylene and an alcohol by introducing undiluted acetylene into a saturator (an absorber) containing an absorbing liquid, i. e. the alcohol, at a low temperature and at a pressure of 5 to 10 atmospheres and reacting the absorbing liquid and absorbed acetylene in a separate reaction vessel at a higher temperature and under a sufficiently high pressure to prevent the escape of acetylene from the solution.

Appellants argue that while Maragliano professes to provide a process free of danger of explosion, *pure, undiluted acetylene* cannot be safely handled in the gas phase at a pressure of about 5 to 10 atmospheres. Insofar as diluting acetylene with a nondecomposable substance before its introduction into an absorbing liquid is concerned, however, we think it clear from the cited patents that one normally skilled in the art would be well aware of the *safety* factor that would be produced by mixing the acetylene while under pressure in Ma-

acted with the methanol to form methyl vinyl ether or (2) serve as a liquid medium for the reaction of acetylene with

itself or with other reactants in the absorbing liquid.

ragliano's process with a nondecomposable substance prior to the introduction of acetylene into the absorbing liquid, i. e. the alcohol.

The Reppe (I) patent in discussing the reaction of acetylene and ethyl alcohol states:

"The danger of explosions may be avoided by diluting the acetylene with inert gases, as for example nitrogen, methane, ethane, hydrogen or mixtures of these; even when greatly diluted, the acetylene can be brought into reaction with the hydroxy compounds."

Similarly the Beller et al. patent in describing the handling of acetylene for reaction with an alcohol states:

"It should be noted that in practicing the process of the present invention, it is desirable that the acetylene be diluted, *at all times*, while it is under pressure or at an elevated temperature." [Emphasis ours.]

The advantage in maintaining the pressure of the mixture of acetylene and nondecomposable substance below its explosion limit we think is obvious. Furthermore, such a pressure seems to be readily ascertainable. Appellants disclose in their brief before the board:

"Explosion limits for various diluted gaseous mixtures are known in the art or can be readily ascertained by laboratory experiments."

The Reppe (I) patent also states:

" * * * the limit for explosions on working with acetylene and its homologues at the different pressures and temperatures is well known in the art. * * * "

The appealed claims further distinguish over the Maragliano process in the inclusion of the limitation that the concentration of dissolved acetylene in the absorbing liquid is below and near the ignition limit of 100 normal cubic centimeters of acetylene per cubic centimeter of absorbing liquid. Appellants have argued in their request for reconsideration before the board that:

"the person of ordinary skill of the art of acetylene reactions did not know at the time of applicants' invention that solvents containing absorbed acetylene in amounts above about 100 normal cubic centimeters of acetylene per cubic centimeter of solvent were dangerous, ignitible compositions." [4]

We think it clear, however, that a person desirous of obtaining a high "space-time yield" with a reaction involving acetylene would work with the greatest possible concentration of reactants but being aware of the inherent instability of acetylene, would take appropriate precautionary measures especially when using apparatus which might not withstand great, sudden increases in pressure. This, it seems to us, would involve absorbing acetylene in the absorbing liquid of Maragliano, at a concentration below but near [5] the so-called ignition limit of acetylene. Appellants in their application state:

"It is already known that in the reaction of gaseous or vaporous substances in the gaseous phase or *in a liquid medium* the speed of reaction and consequently the space-time yields are higher the greater the concentration in which the initial

4. There is an affidavit on record by Albert Zieger, one of the inventors, which states that "to the best of my knowledge and belief, I and Walter Bueche are the discoverers of the ignition limit of acetylene in solution."

5. Neither the claims nor the application specify any limits as to what is "near" and "not near." Moreover, it appears that in absorbing the acetylene into the absorbing liquid to obtain a concentration near the ignition limit, various factors have to be considered. Appellants in their application disclose *"By suitable choice of the absorber temperature* it can always be ensured that in the liquid in the reaction chamber the content of decomposable gases is near to the limiting concentration and that therefore the highest possible space-time yields are obtained." [Emphasis ours.] These matters appear to have been left by appellants to be determined by one skilled in the art.

materials are used. *Limits are placed on this concentration,* however, when working up substances which can decompose under the reaction conditions with the production of large amounts of heat. If high concentrations are nevertheless used in the interests of a high speed of reaction, apparatus must be used which is able to withstand great, sudden increases in pressure, for example an increase of ten times." [Emphasis ours.]

Even though such limits are not referred to as the so-called "ignition limit" we think the above quotation indicates that it is well known that one skilled in the art would be aware that there is a concentration limit to be considered when working with acetylene in a liquid medium. The term "ignition limit" as such has not been defined by appellants in their application.[6] It seems apparent, however, that it is used to designate the most productive concentration limit for the safe handling of acetylene in an absorbing liquid. We consider that, just as a person of ordinary skill in the art can readily ascertain what are explosive limits for various gaseous mixtures by laboratory experiments, what is below but near the ignition limit, what is a suitable choice for the absorber temperature,[7] he could also determine that concentration limit for the safe handling of acetylene.

Claim 10 calls for the steps of reducing the pressure of the unabsorbed portion of the gaseous mixture to a pressure in which acetylene in pure form is not decomposable with detonation, adding fresh acetylene to the unabsorbed portion of the gaseous mixture at the reduced pressure, recompressing the gaseous mixture enriched with fresh acetylene, and returning the same to the absorber. We agree with the board's analysis that the additional steps in claim 10 "recite nothing more than the usual recycling, with due precautions to insure low pressure when the acetylene concentration is high, thus avoiding the danger of detonation," and can perceive nothing unobvious in their utilization in the claimed process.

Claim 11 adds to claim 8 the step wherein the gas spaces of the absorber and the reaction vessel are connected so that the pressures on the liquid in the absorber and in the reaction vessel are substantially the same. We think, however, that it would be obvious when it is desired to maintain two units at the same pressure to connect the units to each other.

In view of the foregoing, the decision of the board is affirmed.

Affirmed.

---

6. Appellants in their brief state that "The ignition limit means the maximum concentration of the acetylene in the absorbing liquid at which ignition of the solution by the fusing of a platinum wire is impossible." Bernard Lewis and Guen- ther von Elbe in indexing "Ignition limits" in their book "Combustion, Flames and Explosions of Gases" p. 789 (1951) refer to "Explosion limits."

7. See footnote 5.